**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **JOHN JOYCE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:25-cv-97** |
| | ) | |
| **FEDERAL HOME LOAN MORTGAGE** | ) | |
| **CORPORATION d/b/a FREDDIE MAC** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**JACKSON LEWIS P.C.**

Dated:  May 6, 2025                    Respectfully submitted,

/s/ Jason A. Ross
Jason A. Ross (VSB No. 91034)
10701 Parkridge Boulevard, Suite 300
Reston, VA  20191
Phone: 703-483-8300
Fax: 703-483-8301
Jason.Ross@jacksonlewis.com

*Counsel for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT OF ALLEGED FACTS ........................................................................... 2

    The April 2, 2024 Email ............................................................................................ 2

    The May 16, 2024 Email ........................................................................................... 3

    The June 5, 2024 Email ............................................................................................. 5

STANDARD OF REVIEW .............................................................................................. 6

ARGUMENT ..................................................................................................................... 7

    A.    Plaintiff Did Not Engage in Protected Activity. ......................................... 7

           1.    The April 2, 2024 Email Does not Constitute Protected Activity. ............. 8

           2.    Plaintiff Fails to Allege that the April 21, 2024 HR Complaint Constitutes Protected Activity. ...................................................................................... 9

           3.    The May 16, 2024 Email Does not Constitute Protected Activity. .......... 10

           4.    The June 5, 2024 Email Does not Constitute Participation in Protected Activity Given the Disorderly, Disruptive Communication ...................... 11

    B.    Plaintiff Fails to Plausibly Allege a Causal Connection Between any Alleged Protected Activity and His Termination. ............................................................. 14

           1.    The April 2, 2024 and May 16, 2024 Emails Lack Temporal Proximity to the Adverse Employment Action. ............................................................ 15

           2.    Plaintiff's June 5, 2024 Email is an Intervening Act that Breaks any Inference of Causal Connection. ............................................................. 15

           3.    Plaintiff Does not Allege that the Decisionmakers were Aware of his "Protected Activity." .............................................................................. 17

CONCLUSION ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Federal Express Corp.*,
  No. 1:09CV17, 2011 U.S. Dist. LEXIS 34812 (M.D.N.C. Mar. 31, 2011)...........................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................6

*Booth v. Leggett*,
  186 F. Supp. 3d 479 (D. Md. 2016) ......................................................................................9, 10

*Byrd v. Ta Chen Int'l*,
  No, DKC 19-1873, 2021 U.S. Dist. LEXIS 183287 (D. Md. Sep 24, 2021)....................12, 14

*Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*,
  No. 1:23cv1110, 2024 U.S. Dist. LEXIS 110887 (E.D. Va 2024) .........................................16

*Clarke v. DyncCorp Int'l LLC*,
  962 F. Supp. 2d 781 (D. Md. 2013) ........................................................................................15

*Colquitt v. Bon Secour Mercy Health*,
  No. 4:21-cv-53, 2022 U.S. Dist. LEXIS 28308 (E.D. Va. Feb. 16, 2022) ..........................8, 11

*Cox v. Red Hat, Inc.*,
  No. 1:23-cv-766, 2025 U.S. Dist. LEXIS 52953 (E.D. Va. 2025) (Alston, J.) ......................15

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*,
  555 U.S. 271 (2009)...................................................................................................................7

*EEOC v. Navy Fed. Credit Union*,
  424 F.3d 397 (4th Cir. 2005) .....................................................................................................7

*Giarratano v. Johnson*,
  521 F.3d 298 (4th Cir. 2008) .....................................................................................................6

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ..................................................................................................6, 8

*Hawthorne v. Birdville Indep. Sch. Dist.*,
  No. 24-10398, 2025 U.S. App. LEXIS 3121 (5th Cir. Feb. 11, 2025) ...............................9, 10

*Johnson v. Global Language Ctr.*,
  No. 21-1638, 2023 U.S. App. LEXIS 12963 (4th Cir. 2023) ...........................................11, 14

*Johnson v. Mechs. & Farmers Bank*,
   309 Fed. Appx. 675 (4th Cir. 2009).................................................................................11, 12, 13

*Jordan v. Alternative Res. Corp.*,
   458 F.3d 332 (4th Cir. 2006) ...................................................................................................7

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) (en banc) .................................................................................18

*Laughlin v. Metro. Wash. Airports Auth.*,
   149 F.3d 253 (4th Cir. 1998) ...................................................................................11, 12, 14

*Painter's Mill Grill, LLC v. Brown*,
   716 F.3d 342 (4th Cir. 2013) ....................................................................................................6

*Penley v. McDowell Cnty. Bd. of Educ.*,
   876 F.3d 646 (4th Cir. 2017) ...........................................................................................14, 15

*Perry v. Kappos*,
   489 F. App'x 637 (4th Cir. 2012) ...........................................................................................15

*Phillips v. Loudoun Cty. Pub. Schs.*,
   No. 1:19-cv-501, 2019 U.S. Dist. LEXIS 184322 (E.D. Va. Oct. 23, 2019)...........................18

*Presnell v. Sharp Elecs. Corp.*,
   No. 5:21-cv-00107, 2022 U.S. Dist. LEXIS 224830 (W.D. N.C. Dec. 14, 2022)..............8, 10

*Republican Party v. Martin*,
   980 F.2d 943 (4th Cir. 1992) ....................................................................................................6

*Salagh v. Virginia Int'l Univ.*,
   No, 1:16-cv-1321, 2017 U.S. Dist. LEXIS 35808 (E.D. Va. Mar. 13, 2017)...........................6

*Thompson v. Illinois Dept. of Prof'l Regulation*,
   300 F.3d 750 (7th Cir. 2002) ....................................................................................................6

*Woods v. Edelman Fin. Engines, LLC*,
   No. 2:23-cv-02259, 2024 U.S. Dist. LEXIS 152555 (D. Kan. Aug. 26, 2024)...................9, 10

## Statutes

42 U.S.C. § 2000e-3(a) ....................................................................................................................7

## Other Authorities

Fed. R. Civ. P. 10(c) ......................................................................................................................3

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") submits this Memorandum in Support of its Motion to Dismiss Plaintiff John Joyce's Complaint with prejudice.

## INTRODUCTION

Plaintiff's Complaint is a one-count retaliation claim contending Freddie Mac violated Title VII of the Civil Rights Act of 1964 ("Title VII") by retaliating against him for "reporting discriminatory conduct." Compl. ¶ 28. Plaintiff's claim fails because he does not plausibly allege that he engaged in protected activity under Title VII. Even if the conduct alleged did constitute protected activity, Plaintiff's claim would still fail because it is clear on the face of the Complaint that there is no causal connection between the conduct Plaintiff claims is protected activity and the termination of his employment.

Plaintiff alleges he engaged in protected activity when he complained that his Indian colleagues were paid more than him even though they did inferior work. However, the only person who engaged in discriminatory conduct from the facts alleged is Plaintiff himself. In contrast, the Complaint is devoid of any allegations of discrimination or retaliation attributable to Freddie Mac.

Plaintiff attaches three emails to his Complaint and references an HR Complaint wherein he contends he engaged in protected activity under Title VII, but the actual contents of the communications belie Plaintiff's characterizations. The first two emails do not mention anything about his Indian colleagues being paid more or mention any type of discriminatory practice. Accordingly, the emails facially do not evidence opposition to unlawful conduct under Title VII and therefore cannot form the basis of a retaliation claim. Plaintiff does not allege that the HR Complaint complains about discrimination or pay either – instead, he alleges it complained of being excluded from certain meetings for having asked for a pay raise. This too does not constitute protected activity.

That leaves only Plaintiff's June 5, 2024 email.  This correspondence is nothing more than a racist and unprofessional diatribe. Plaintiff tells his Indian supervisor she is "incapable of forming an intelligent argument," declares her employment with Freddie Mac a "boondoggle," asks her whether she tells her children she makes a living "stealing money from white people," and tells his supervisor to "never speak to me again."  He also refers to his Indian colleagues as "idiots," "fools," and "thieves."  He further contends the very fact that Freddie Mac employs these Indian employees will cause Freddie Mac to go down like a "Boeing 777 Max with its Indian-coded auto-pilot software: 600 mph nose-dive straight into the ground."

Plaintiff's decision to attach this email to his Complaint shows he is not ashamed of his racism or his unprofessionalism.  He also explicitly alleges that it was this email – not some imaginary retaliatory animus – that caused Freddie Mac to terminate his employment.  Indeed, this email alone provides more than sufficient non-retaliatory grounds for his termination.

In short, Plaintiff's sole count fails to state a claim.  He does not allege protected activity, and his Complaint makes clear he was not terminated because he opposed unlawful activity.  The Court should dismiss Plaintiff's Complaint with prejudice.

## STATEMENT OF ALLEGED FACTS

Freddie Mac employed Plaintiff as a Senior Agile Developer for approximately four years. Compl. ¶¶ 8-9.  Plaintiff is "objectively Caucasian by his appearance."  *Id.* ¶ 11.  Plaintiff's "co-workers and supervisors are objectively south Asian, specifically and predominately, Indian based upon their appearances and names."  *Id.* ¶ 12.  Plaintiff received a promotion on April 1, 2024. Compl. ¶ 14.

### The April 2, 2024 Email

On April 2, 2024, Plaintiff emailed his supervisor, Vidhyasankari Padmanabhan,

expressing his dissatisfaction with his new salary as a result of his promotion and requested a raise. Compl. ¶ 18; ECF 1-1 at 7.[1]  In his email, Plaintiff requested that his supervisor authorize a salary of $150,000 annually, rather than $140,000.  *Id.* at 9.  As the basis for this request, Plaintiff cites the Bureau of Labor Statistics' purchasing power data to suggest that his current salary is not keeping up with the cost of inflation.  *Id.* at 7.  He further notes that the United States government wastes trillions of dollars on establishing overseas surveillance states.  *Id.*  Plaintiff generally notes that several unidentified colleagues produce "bad code."  *Id.* at 7-9.

He does not mention discrimination in this email, nor does he allege that others of a protected class were treated more favorably or paid more than him.  Plaintiff does not articulate any racial or discriminatory component to his request for a higher salary.

Plaintiff's supervisor did not respond to this email.  Compl. ¶ 18.  Thereafter, "Plaintiff was informed" by an unidentified individual that "he had been intentionally excluded" from team meetings.  *Id*. ¶ 19.  On April 21, 2024, Plaintiff filed "a formal complaint with human resources regarding this issue"; it is not clear whether "this issue" was the supervisor's failure to respond to the email seeking a pay raise or the alleged exclusion from important meetings.  *Id*. ¶ 20.

### **The May 16, 2024 Email**

On May 16, 2024, Plaintiff sent another email to his supervisor stating he did not receive a response to his April 2, 2024 email.  Compl. ¶ 21.  In this email, Plaintiff claims he wants to "end all forms of discrimination at Freddie Mac, including but not limited to exclusion from the 'important teams' of which Jeeva spoke."  ECF 1-1 at 4.[2]  Plaintiff then states, "I am an equal to

---

[1] The emails Plaintiff attached to his Complaint are part of the pleadings: "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

[2] Although Plaintiff does not further identify Jeeva in his email, Defendant believes he is referring to a consultant who worked on projects with Plaintiff during his tenure at Freddie Mac.

my colleagues at Freddie and I should be paid as an equal." *Id.* Plaintiff lists 14 bullet pointed examples of instances where he believed his co-workers demonstrated incompetence in coding: in some instances, he identifies the coworker by name, and in others he does not. *Id.* at 4-6. Plaintiff ended his email with the following statements:

> Someone who hasn't worked in the IT industry with Indian/Desi people for 10 years would be very confused as to how so many people with such huge gaps in fundamental knowledge, knowledge that is essential to the practice of software development, could get jobs with such high titles and salaries. I will give a brief description to demonstrate my awareness of the situation. The current state of the IT/software industry can be though[t] of as existing in 2 or 3 tiers. The top tier is the tier to which all of the Ivy League graduates get direct and immediate access. *The bottom 1 or 2 tiers is 100% under the control of Indian people…* Everyone knows the fastest and most common way to get a promotion/salary increase is to change jobs. *Well, without putting to[o] fine of a point on this, it should be obvious that it is quite easy for Indian people to change jobs quite frequently.* (This is not speculation, I have seen it happen)[.] *Especially when they are changing jobs within the industry tiers entirely under the control of their particular ethnic group….*

*Id.* at 6 (emphasis added).

Though Plaintiff listed a series of grievances relating to the perceived deficiencies of certain of his colleagues, and generically stated that he believes Indian people are able to switch jobs more frequently, the May 16 email does not make any mention or complaint of discrimination. Nor does the email state that he believes any colleagues are paid more than him on the basis of his Caucasian race. The email also does not accuse Freddie Mac of participating in any unlawful action relating to its rates of pay.

On June 5, 2024, Kalpana Gupta (Plaintiff's immediate supervisor) responded to the May 24, 2024 email stating:

> for all internal promotions, compensation is based on what is appropriate for the new role, individual experience, market range for the role, performance, budget and more. Employees gaining experience at the level of the new role will likely [be] positioned lower in the market range, being newer to the job. With more experience and good performance, the expectation would be for you to see additional increases.

*Id.* at 2. She further stated that after reviewing Plaintiff's compensation, no adjustments would be made at this time. *Id.*; Compl. ¶ 23.

### The June 5, 2024 Email

A few hours later, Plaintiff responded to Gupta with an email which included the following statements, among others:

- "You did not even attempt to address a single point I made below because you lack the knowledge to formulate an intelligent argument on the subject. All of you do."

- "And these idiots… these overpaid Indians you have hired… STILL TO THIS DAY DON'T UNDERSTAND… EVEN AFTER I HAVE EXPLAINED IT [SIC] THEM ON SEVERAL OCCASSIONS!!!"

- "Four years later, these fools would still be struggling to achieve basic functionality to this very day were it not for me… Freely I gave to you and you're [sic] people of my time and delivered billions of dollars' worth of software and you repay me by stealing from me."

- "I've spent too much of my life teaching Indian people how to code while they make more money than me… There is a scam being perpetrated on the citizens of the U.S. and you are all scammers."
- "You're [sic] employment with Freddie Mac is a boondoggle."

- "[Freddie Mac] is going down like a Boeing 777 Max with its Indian-coded auto-pilot software: 600 mph nose-dive straight into the ground…"

- "You are all criminals and I would be embarrassed and ashamed to make even a single penny doing what you do. What do you tell your children it is that you do for a living? Do you tell them the truth? Do you look them in the eyes and tell them: 'I steal money from white people' Because that's the only honest thing you could ever say. You are all thieves. Don't ever speak to me again."

ECF 1-1 at 1.

"Immediately thereafter, an HR investigator contacted Plaintiff to inform him he was the subject of an investigation based on his June 5, 2024 email." Compl. ¶ 24. The "investigation based on his June 5, 2024 email [] ultimately resulted in the termination of his employment [sic]

suspension on June 7, 2024 and termination thereafter formally on July 18, 2024."  Compl. ¶ 24.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, a complaint "must provide enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" to be sufficient.  *Salagh v. Virginia Int'l Univ.*, No, 1:16-cv-1321, 2017 U.S. Dist. LEXIS 35808, at *7 (E.D. Va. Mar. 13, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 557).  The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" or conclusory allegations regarding the legal effect of the facts alleged. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Painter's Mill Grill, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) ("It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss.").  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere speculative possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a plaintiff "attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."  *Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016).  Under the "exhibit prevails" rule, there is a "general rule that the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of the complaint."  *Goines*, 822 F.3d at 165 (citing *S. Walk at Broadlands Homeowner's*

*Ass'n. v. OpenBand at Broadlands, LLC*, 713 F. 3d 175, 182 (4th Cir. 2013)).

## **ARGUMENT**

Plaintiff's one-count Complaint fails to state a plausible cause of action for retaliation in violation of Title VII. Title VII states it is unlawful for an employer to "discriminate against any of his employees … because he has opposed any practice made unlawful [under Title VII]." 42 U.S.C. § 2000e-3(a). To state a *prima facie* claim of retaliation in violation of Title VII, a plaintiff must plausibly allege: (1) he engaged in protected activity, (2) his employer took an adverse employment action against him and (3) there was a causal link between the protected activity and the adverse employment action. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

Here, Plaintiff fails to plausibly allege the first and third elements of the *prima facie* case.

### A.      **Plaintiff Did Not Engage in Protected Activity.**

Plaintiff's claim for retaliation fails because Plaintiff has not plausibly alleged he engaged in protected activity and therefore cannot make out the first element of a *prima facie* case.

"Protected activity" under Title VII falls into one of two categories: opposition or participation.[3] *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009). To engage in protected opposition activity, a Plaintiff must convey to the employer a reasonable belief that the actions complained of violated federal law. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006) ("an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing *Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005)). The

---

[3] The Complaint contains no allegations related to participation in an ongoing investigation or proceeding under Title VII—so Freddie Mac does not address that category of protected activity.

unlawful conduct a plaintiff opposes or complained about must be conduct prohibited by Title VII. *Colquitt v. Bon Secour Mercy Health*, No. 4:21-cv-53, 2022 U.S. Dist. LEXIS 28308, at *7-8 (E.D. Va. Feb. 16, 2022).

Here, Plaintiff alleges he "was terminated for engaging in a protected activity based on his complaints regarding racial discrimination and unequal pay [on] April 2, 2024, April 21, 2024, May 16, 2024, and June 5, 2024."  Compl. ¶ 25.

However, the allegations and attached correspondence from those dates clearly establish that none of them constitute protected activity that could form the basis of a retaliation claim.  And, where, as here, a document Plaintiff attached to his Complaint contradicts Plaintiff's allegations, the Court must defer to the document.  *Goines*, 822 F.3d at 165 ("exhibit prevails in the event of a conflict between an attached exhibit and the allegations of the complaint.").

### 1. *The April 2, 2024 Email Does not Constitute Protected Activity.*

Plaintiff alleges he raised the issue of pay discrepancy between himself and his Indian peers in an email on April 2, 2024.  But the April 2, 2024 email—which he attaches to his Complaint—does not address any alleged pay disparity based on race or national origin.  ECF 1-1 at 7-10. Rather, it merely expresses dissatisfaction with Plaintiff's compensation and references labor statistics, his experience, skills, and education as reasons why his salary should be adjusted.  His further social commentary on how the United States government deploys its tax dollars is of no relevance.  Plaintiff does not raise a belief that Freddie Mac is violating the law by having set his salary where it did.  He also does not ascribe a racially discriminatory motivation for his salary, nor complain that any comparator of a different race unlawfully makes more money than him.

Courts have consistently held that requests for raises or generic complaints about salary untethered from a discriminatory motivation cannot support a Title VII claim.  *Presnell v. Sharp*

*Elecs. Corp.*, No. 5:21-cv-00107, 2022 U.S. Dist. LEXIS 224830, at *30-31 (W.D. N.C. Dec. 14, 2022) ("No matter how unfair an employee's compensation may be, complaining about compensation unrelated to discriminatory conduct is not covered by Title VII."); *Woods v. Edelman Fin. Engines, LLC*, No. 2:23-cv-02259, 2024 U.S. Dist. LEXIS 152555, at *24 (D. Kan. Aug. 26, 2024) ("Generic complaints about unequal pay unaccompanied by some expression of concern about unlawful discrimination are not enough to show protected opposition."); *Hawthorne v. Birdville Indep. Sch. Dist.*, No. 24-10398, 2025 U.S. App. LEXIS 3121, at *5-6 (5th Cir. Feb. 11, 2025) ("[Courts have] rejected claims premised on generic complaints that do not specify how the treatment is unlawful" where plaintiff "did not complain of unfair treatment" based on his gender but merely "requested a review on his salary.") (cleaned up); *Booth v. Leggett*, 186 F. Supp. 3d 479, 488 (D. Md. 2016) (an "act of inquiring about policies, raising the issue of lack of annual evaluations and other concerns" without opposing an employment practice unlawful under Title VIII is not enough).

A plain reading of the April 2, 2024 email shows that it is a generic request to adjust his salary untethered to a complaint of discrimination; it does not constitute legally protected activity.

## 2. *Plaintiff Fails to Allege that the April 21, 2024 HR Complaint Constitutes Protected Activity.*

Plaintiff's only allegation relating to his April 21, 2024 HR complaint is that he filed a formal complaint with human resources "regarding this issue." Compl. ¶ 20. "This issue" refers to the preceding paragraph wherein Plaintiff alleges he was excluded from "important team meetings" as a result of sending the April 2, 2024 email asking for a salary increase. *Id.* ¶¶ 18, 19.

For the same reasons as the April 2, 2024 email, the allegations concerning Plaintiff's April 21, 2024 HR complaint do not plausibly qualify as protected activity. At this point, Plaintiff had only asked for an increase in his salary in his April 2, 2024 email. Because a complaint about

one's salary without an alleged discriminatory component is not a protected activity, at the time of his "HR Complaint" he had not yet opposed any conduct made unlawful under Title VII and therefore had not engaged in any protected activity.  Even accepting his inference as true that he was excluded from meetings for asking for a pay raise, it does not establish actionable retaliation under Title VII because there is no opposition to unlawful activity.

As the courts held in *Presnell, Woods*, *Booth* and *Hawthorne*, even assuming Plaintiff was excluded from meetings for asking that Freddie Mac raise his salary, Title VII does not apply because Plaintiff only asked for a review of his salary – he did not tie it to or oppose unlawful activity under Title VII.

### 3. *The May 16, 2024 Email Does not Constitute Protected Activity.*

The May 16, 2024 email also does not establish protected activity.  Plaintiff alleges his May 16, 2024 email raised "concerns that the pay disparity appeared to be a form of racial pay discrimination."  Compl. ¶ 21.  However, this allegation suffers from the same flaw as the April 2, 2024 email; namely, the email itself evidences no such claim.

The May 16, 2024 email makes no mention of any pay discrepancies based on race or any other protected characteristic.  ECF 1-1 at 4-6.  In fact, the only mention of "discrimination" is Plaintiff ambiguously stating, "I want to end all forms of discrimination at Freddie Mac, including but not limited to my exclusion from the 'important teams'…".  *Id.* at 4.  The email primarily consists of random examples of Plaintiff's perception that he outperforms his peers.  *Id.* at 4-6.  In fact, the only reasonable inference from the May 16, 2024 email is that Plaintiff believed he was underpaid as compared to his colleagues because he thought his colleagues were poor performers – not because of their race.  The only reference to Indian people of any kind in the email is Plaintiff's assertion that in the IT industry, generally, Indian workers switch jobs more frequently

for the purpose of increasing their salaries. *Id.* at 6. There is of course nothing unlawful about switching ones' job, and the alleged frequency with which Indian workers in the IT industry generally change jobs has nothing to do with Freddie Mac.

Accordingly, the May 16, 2024 email also does not constitute an opposition to an unlawful action, and therefore is not legally protected activity under Title VII. *See Colquitt*, 2022 U.S. Dist. LEXIS 28308, at *7-8 (dismissing retaliation claim because plaintiff did not adequately allege that she complained or opposed conduct prohibited by Title VII).

### 4. *The June 5, 2024 Email Does not Constitute Participation in Protected Activity Given the Disorderly, Disruptive Communication*

Plaintiff's allegations relating to his June 5, 2024 email response also do not qualify as Title VII protected or oppositional activity because, while Plaintiff did finally accuse his supervisors of discriminatory conduct, he did so in a manner that was disruptive and disorderly. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (holding that "Title VII was not intended to immunize insubordinate, disruptive or nonproductive behavior at work"), *accord Johnson v. Global Language Ctr.*, No. 21-1638, 2023 U.S. App. LEXIS 12963, at *17 (4th Cir. 2023).

The Fourth Circuit has a "well-established balancing test" that "provides an adequate, workable framework for assessing opposition clause claims" which "balance[s] the purpose of [Title VII] to protect persons engaging reasonably in activities opposing … discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin*, 149 F. 3d at 259-260 (quoting *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981)).

Applying this test, courts consistently find that disruptive or insubordinate conduct is not reasonable opposition and, therefore is not protected oppositional activity under Title VII. *Johnson*

*v. Mechs. & Farmers Bank*, 309 Fed. Appx. 675, 684-85 (4th Cir. 2009) (plaintiff "had clearly become insubordinate and insolent in dealing with his supervisors," such that "no reasonable jury could conclude that the Bank terminated him on account of [protected activity]."); *Byrd v. Ta Chen Int'l*, No, DKC 19-1873, 2021 U.S. Dist. LEXIS 183287, at *16 (D. Md. Sep 24, 2021) (plaintiff is "not entitled to misbehave in the workplace or to create disturbances that disrupted the tranquility there … He cannot immunize 'insubordinate, disruptive, or nonproductive behavior' by arguing that it was undertaken to oppose unlawful practices.").

In *Laughlin*, the plaintiff was terminated because she removed confidential documents from her boss's desk, photocopied them, and sent them to a former colleague she believed was preparing for litigation against the company.  149 F.3d at 256.  Applying the balancing test, the Court stated: "we easily conclude that the employer's interest in maintaining security and confidentiality of sensitive personnel documents outweighs" the plaintiff's interests in disclosing the documents.  *Id.* at 260.  The Court noted that "participating in an employer's informal grievance procedures, when done in a manner that is not disruptive or disorderly constitute opposition activities that merit protection under Title VII," but the plaintiff's "drastic actions" did not constitute the "*measured responses* to employer discrimination" that Title VII protects.  *Id.* (emphasis added).

In *Mechs. & Farmers Bank*, the plaintiff sent an email to his supervisor with a clear "insubordinate tone."  309 Fed. Appx. at 684.  The email resulted from the combination of the plaintiff not qualifying for incentive pay based on his performance and a directive from his supervisor with which he did not agree.  The plaintiff decided not to follow his supervisor's directive, and ultimately was terminated because he "clearly [became] insubordinate and insolent in dealing with his superiors."  *Id.*  The Fourth Circuit affirmed that the tone of the plaintiff's email

was "unmistakably insubordinate and insolent," finding there was no claim for retaliation.

Here, Plaintiff alleges that on June 5, 2024, he "immediately responds to the denial" that no salary adjustment would be forthcoming. Compl. ¶¶ 23, 25. As detailed above, his June 5 email to his supervisor contained the following insubordinate and disruptive statements, among others:

- "you lack the knowledge to formulate an intelligent argument on the subject. All of you do."

- "And these idiots… these overpaid Indians you have hired… STILL TO THIS DAY DON'T UNDERSTAND"

- "Four years later, these fools would still be struggling to achieve basic functionality to this very day were it not for me… Freely I gave to you and you're [sic] people of my time..."

- "I've spent too much of my life teaching Indian people how to code while they make more money than me… There is a scam being perpetrated on the citizens of the U.S. and you are all scammers."

- "You are all criminals and I would be embarrassed and ashamed to make even a single penny doing what you do. What do you tell your children it is that you do for a living? Do you tell them the truth? Do you look them in the eyes and tell them: 'I steal money from white people' Because that's the only honest thing you could ever say. You are all thieves. Don't ever speak to me again."

ECF 1-1 at 1. The disruptiveness and racism of Plaintiff's email greatly exceeds the email in *Mechs. & Farmers Bank* that the Fourth Circuit found was "unmistakably" a ground for termination:

> For comparison, the email from the *Mechs. & Farmers Bank* plaintiff stated:
>
> I am deeply disappointed with your entire memo dated May 3, 2005, concerning the incident between Lori [Corpening] and Leslie [Cato] on April 26, 2005. Your memo is vague, and there is a lot to be desired in the area of clarity, truth, and understanding… Steve Savia, your paid consultant, was very transparent in his interviews, and I'm sure his analysis of the incident is tainted as well. . . . [D]ue to his [Savia's] bias perpetrated by your direction and his desire for commissions, you and he continue to spin results which creates a diametrically opposite analysis of

the incident.

309 Fed. App'x. at 679.  If accusing your supervisor of writing a disappointing memo or putting "spin" on the results of investigation is enough to lose Title VII's protection, surely an accusation of thievery, a racist diatribe, and referring to your colleagues and supervisors as idiots and fools must, too.

Plaintiff's responses were far from the "measured response" required by the Fourth Circuit, and the statements unequivocally demonstrate Plaintiff's concerning and disruptive behavior at work.  In *Global Language Ctr.*, the Fourth Circuit affirmed that "Title VII was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work."  2023 U.S. App. LEXIS 12963, at \*17 (quoting *Laughlin*, 149 F.3d at 260).  In *Byrd*, the court concluded "[b]ut for his own behavior, [he] would not have been disciplined or fired," and thus, the employer's decision to terminate him was a result of his own actions, not Title VII protected activity. 2021 U.S. Dist. LEXIS 183287, at \*17. Here, it was plaintiff's own decision to send an insubordinate, racist and disruptive email that directly led to his termination.  In applying the *Laughlin* balancing test, the Court here can "easily conclude" Freddie Mac's interest in shielding its employees from racist and unprofessional diatribes outweighs Joyce's interest in sending the email.

Therefore, Plaintiff fails to plausibly allege an essential element of a retaliation claim—that he engaged in legally protected activity.  This mandates dismissal.

**B.    Plaintiff Fails to Plausibly Allege a Causal Connection Between any Alleged Protected Activity and His Termination.**

Plaintiff also fails to plausibly allege the third element of a *prima facie* Title VII retaliation claim – a causal connection between any alleged protected activity and his termination.  *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017).  "To establish causation, Plaintiff must allege facts sufficient to reasonably infer that [his] protected activity was the 'but-for' cause

of an alleged adverse employment action." *See Cox v. Red Hat, Inc.*, No. 1:23-cv-766, 2025 U.S. Dist. LEXIS 52953, at *47 (E.D. Va. 2025) (Alston, J.) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

### 1. *The April 2, 2024 and May 16, 2024 Emails Lack Temporal Proximity to the Adverse Employment Action.*

A lack of temporal proximity between the protected activity and the adverse employment action can destroy the inference of causality; the Court can infer causation only when there is a close temporal proximity between the two events. *Penley*, 876 F.3d at 656. "[A] lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DyncCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (ten-week gap "sufficiently long so as to weaken significantly the inference of causation between the two events")); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) ("[A] three-month lapse is too long to establish causation, without more").

Even if Plaintiff's April 2, 2024 and May 16, 2024 emails or April 21, 2024 "HR Complaint" raised issues related to conduct prohibited by Title VII and thus constituted protected activity—they do not—these emails were sent more than two months prior to Plaintiff's termination, weakening any inference of causation.

### 2. *Plaintiff's June 5, 2024 Email is an Intervening Act that Breaks any Inference of Causal Connection.*

Plaintiff alleges he sent an email on June 5, 2024, to his supervisor in response to the supervisor informing him that his request for a pay raise was denied. Compl. ¶ 23. As discussed above, this email is a racist, insubordinate, and unprofessional rant wherein Plaintiff berates the intelligence and character of his supervisor and colleagues, largely on the basis of their national

origin. He tells his supervisor she lacks the ability to formulate an "intelligent argument," and he refers to his colleagues as "idiots," "fools," and "overpaid Indians." He calls his supervisor's employment a "boondoggle," and says she and his Indian colleagues are "thieves" who make a living by "stealing money from white people." ECF 1-1 at 1. He states that because Freddie Mac is employing this Indian supervisor and colleagues, the company "is going down like a Boeing 777 Max with its Indian-coded auto-pilot software: 600 mph nose-dive straight into the ground." *Id.* He tells his supervisor "[d]on't ever speak to me again." *Id.*

This email to a supervisor containing degrading, insulting, and racist language is an intervening action that destroys any inference of causation between any protected activity and the adverse employment action. *See, e.g.*, *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 1:23cv1110, 2024 U.S. Dist. LEXIS 110887, at *22-23 (E.D. Va 2024) (confirming that "[t]emporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action.") (cleaned up); *Allen v. Federal Express Corp.*, No. 1:09CV17, 2011 U.S. Dist. LEXIS 34812, at *29 n.6 (M.D.N.C. Mar. 31, 2011) (causal connection between employee's filing of an EEOC charge and termination was broken by intervening incident where she threatened co-worker).

Plaintiff even alleges "[i]mmediately thereafter," referencing his June 5 email transmission, "an HR investigator contacted Plaintiff to inform him that he was the subject of an investigation based on his June 5, 2024 email." Compl. ¶ 24. He further alleges that that investigation "ultimately resulted in the termination of his employment suspension on June 7, 2024 [sic] and termination thereafter formally on July 18, 2024." Lest there was any doubt that the June 5 email was the intervening factor, and the ultimate reason for his termination, Plaintiff himself

16

alleges it.

Plaintiff's Complaint makes it clear that Freddie Mac terminated his employment because of the inappropriateness of the June 5, 2024 email, not because he engaged in protected activity.

### 3. **_Plaintiff Does not Allege that the Decisionmakers were Aware of his "Protected Activity."_**

Plaintiff also fails to adequately allege causation because he does not allege, to the extent he engaged in protected activity (which he did not), the decisionmakers who decided to terminate his employment were aware of it.

Plaintiff does not identify the individual who ultimately decided to terminate his employment, but he does allege "an HR investigator" contacted him "to inform him that he was the subject of an investigation based on his June 5, 2024 email, which ultimately resulted in the termination of his employment." Compl. ¶ 24.

He also does not allege, nor allege facts from which the Court can infer, that the "HR investigator" who Plaintiff alleges was looking into his diatribe on June 5, 2024 was aware of any protected activity. As argued above, none of the April 2, 2024, May 16, 2024, or June 5, 2024 emails constitute protected activity, so even if the Court infers the HR Investigator would have read those emails as they are part of the same email chain, it does not impute knowledge of protected activity to the decisionmaker. And, given Plaintiff's explicit acknowledgement that the HR Investigator was investigating "based on his June 5, 2024 email", there is no basis for the Court to infer that this individual had knowledge of Plaintiff's April 21, 2024 HR Complaint, which was not part of the same email chain.

Without such factual allegations, Plaintiff cannot show that his termination was causally connected to any protected activity, because the decisionmaker's knowledge of the protected activity "is absolutely necessary to support the requisite causation between [a] plaintiff's protected

activities and an alleged adverse employment action." *Phillips v. Loudoun Cty. Pub. Schs.*, No. 1:19-cv-501, 2019 U.S. Dist. LEXIS 184322, at *19 (E.D. Va. Oct. 23, 2019); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc). But the Court can infer the "decisionmakers" knew about the June 5, 2024 email containing the real reason for his termination: his unprofessional and racist outburst.

Accordingly, Plaintiff cannot establish causality and therefore cannot establish a plausible Title VII retaliation claim against Freddie Mac based on his termination.

<u>**CONCLUSION**</u>

For the foregoing reasons, and any that may be set forth in related briefing and/or oral argument, Freddie Mac respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted,

**JACKSON LEWIS P.C.**

/s/ Jason A. Ross
Jason A. Ross (VSB No. 91034)
Anna R. Margolis (VSB No. 99805)
JACKSON LEWIS P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, VA 20191
Phone: 703-483-8300
Fax: 703-483-8301
Jason.Ross@jacksonlewis.com
Anna.Margolis@jacksonlewis.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2025, the foregoing *Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint* was electronically filed with the Clerk's Office using this court's CM/ECF system and was served via the Court's ECF system upon all counsel of record.

> Dirk McClanahan (VSB: 81208)
> MCCLANAHAN POWERS, PLLC
> 3160 Fairview Park Drive, Suite 410
> Falls Church, VA 22042
> Tel.: (703) 520-1326
> Fax.: (703) 828-0205
> Email: dmcclanahan@mcplegal.com

> /s/ Jason A. Ross
> Jason A. Ross