IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN JOYCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-97 (RDA/LRV) |
| | ) |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Federal Home Loan Mortgage Corporation's Motion to Dismiss (Dkt. 8). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1), the Memorandum in Support (Dkt. 9), Plaintiff's Opposition (Dkt. 12), and Defendant's Reply (Dkt. 14), this Court GRANTS the Motion to Dismiss for the reasons that follow.

### I. BACKGROUND
#### A. Factual Background[1]

Plaintiff was employed by Defendant as an Agile Development Senior. Dkt. 1 ¶ 8. Plaintiff was terminated on July 18, 2024. *Id.* ¶ 9.

Plaintiff's position involved computer technology, and the majority of Plaintiff's work team were persons of south Asian ethnicity, predominately Indian. *Id.* ¶ 10. Plaintiff asserts that he is "objectively Caucasian." *Id.* ¶ 11. Plaintiff further asserts that "his co-workers and supervisors are objectively south Asian, specifically and predominately, [sic] Indian based upon their appearance and names." *Id.* ¶ 12.

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Plaintiff asserts that, during his tenure, he was successful in his role. *Id.* ¶ 13. On April 1, 2024, Plaintiff was promoted. *Id.* ¶ 14. Despite this promotion, Plaintiff's supervisors routinely suggested that it would be better if Plaintiff returned to the office instead of working remotely. *Id.* ¶ 15. Many of these comments were raised in group calls by a supervisor who knew that Plaintiff had an accommodation. *Id.* ¶ 16.

Plaintiff alleges that, although he was promoted on April 1, 2024, "there were significant discrepancies with Plaintiff's pay and benefits compared to his South Asian, predominately Indian, peers." *Id.* ¶ 17. Plaintiff does not identify those alleged discrepancies or the peers. Plaintiff brought this issue to the attention of his supervisor in an email on April 2, 2024, but was unanswered. *Id.* ¶ 18. Plaintiff does not allege any facts regarding this email but attaches it as an exhibit. Dkt. 1-1 at 7.

In the April 2 Email, Plaintiff noted that his initial salary of $115,000, offered in 2020, had the same buying power as $137,735 in 2024. *Id.* Plaintiff further asserted that, two years prior, someone told him he should be making $150,000. *Id.* Plaintiff also provided examples of how he was successful in his position. *Id.* Plaintiff asserted that "a base salary of $150,000 is an extremely conservative and modest ask given my education, skills, experience and the billions of dollars I have added." *Id.* Plaintiff was thereafter excluded from "important team meetings." Dkt. 1 ¶ 19. Plaintiff filed a complaint with human resources regarding "this issue" on April 21, 2024. *Id.* ¶ 20.

On May 16, 2024, Plaintiff again emailed his supervisor and additional managers, raising concerns that the pay disparity appeared to be a form of racial pay discrimination. *Id.* ¶ 21. Again, Plaintiff does not allege any facts regarding the email but attaches the email to the Complaint. Dkt. 1-1. Plaintiff asserted, "I want to end all forms of discrimination at Freddie Mac, including but not limited to my exclusion from 'important teams.'" *Id.* at 4. Plaintiff again provided examples of his contributions and identified mistakes made by his colleagues. *Id.* Plaintiff stated: "Someone who hasn't worked in the IT Industry with Indian/Desi people for 10 years would be very confused as to how so many people with such huge gaps in fundamental knowledge, knowledge that is essential to the practice of software development, could get jobs with such high titles and salaries." *Id.* Plaintiff then stated: "Everyone knows the fastest and most common

way to get a promotion/salary increase is to change jobs. Well, without putting too fine a point on this, it should be obvious that it is quite easy for Indian people to change jobs quite frequently. (This is not speculation, I have seen it happen) [sic] Especially when they are changing jobs within the industry tiers entirely under the control of their particular ethnic group. I am not ascribing any malicious intent to any Indian people neither in whole nor in part. But everyone should be able to admit that what is happening here is at least unconscious bias." *Id.*

On June 5, 2024, Plaintiff was informed by his supervisor that no salary adjustment would be forthcoming. Dkt. 1 ¶ 22. Plaintiff immediately responded to the denial, asserting that it did not address the points that he made in his May 16, 2024 email. *Id.* ¶ 23. Again, Plaintiff does not allege facts regarding that exchange but has attached the email. Dkt. 1-1.

In his June 5 Email, Plaintiff asserted: "You did not even attempt to address a single point I made below because you lack the knowledge to formulate an intelligent argument on the subject. All of you do." *Id.* Plaintiff further asserted: "And these idiots . . . these overpaid Indians you have hired . . . STILL TO THIS DAY DON'T UNDERSTAND . . . EVEN AFTER I HAVE EXPLAINED IT [sic] THEM ON SEVERAL OCCASSIONS [sic]!!!" *Id.* (emphasis and capitalization in original). He continued: "Four years later, these fools would still be struggling to achieve basic functionality to this very day were it not for me . . . . Freely I gave to you and you're [sic] people of my time and delivered billions of dollars' worth of software and you repay me by stealing from me." *Id.* He then stated: "I've spent too much of my life teaching Indian people how to code while they make more money than me. . . . There is a scam being perpetrated on the citizens of the U.S. and you are all scammers. [. . .] You are all criminals and I would be embarrassed and ashamed to make even a single penny doing what you do. What do you tell your children it is that you do for a living? Do you tell them the truth? Do you look them in the eyes and tell them: 'I steal money from white people' [sic] Because that's the only honest thing you could ever say. You are all thieves. Don't ever speak to me again. I will be pursuing legal action against Freddie Mac and/or all of you racist people." *Id.*

3

An HR investigator then contacted Plaintiff to inform him that he was the subject of an investigation, which resulted in a suspension on June 7, 2024, and then a formal termination on July 18, 2024. *Id.* ¶ 24

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶ 7(a). On October 22, 2024, the EEOC issued Plaintiff a Notice of Right to Sue. *Id.* ¶ 7(b).

### B. Procedural Background

On January 21, 2025, Plaintiff filed his Complaint. Dkt. 1. On May 6, 2025, Defendant filed its Motion to Dismiss. Dkt. 8. On May 20, 2025, Plaintiff filed his Opposition. Dkt. 12. On May 27, 2025, Defendant filed its Reply. Dkt. 14

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

III.  ANALYSIS

Plaintiff asserts a claim of retaliatory discharge pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") in a single-count Complaint. Dkt. 1. Defendant argues that Plaintiff fails to state a claim because (1) Plaintiff did not engage in a protected activity and (2) Plaintiff failed to plead a causal connection between any protected activity and his termination. Dkt. 9. Because the Court finds that Plaintiff failed to plead a protected activity, the Court will grant the Motion.

Plaintiff alleges that he engaged in a protected activity in each of his emails on April 2, April 21, May 16, and June 5. Dkt. 12 at 4. "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). It "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016). To constitute protected activity, plaintiff must have complained of discrimination protected by one of the statutes under which he is bringing his claims. *See McNair v. Computer Data Sys. Inc.*, 172 F.3d 863 (4th Cir. Jan. 26, 1999) (Unpublished Table Decision) ("[A] general complaint of unfair treatment does not translate into a charge of discrimination.").[2]

Plaintiff first alleges that his April 2 Email constitutes a protected activity. It does not. Plaintiff's only allegation regarding his April 2 Email is that he raised "this issue," where it is unclear to what issue he is referring, with his supervisor. Dkt. 1 ¶ 18. This allegation is too vague to establish a protected activity. In any event, Plaintiff's allegations do not control where Plaintiff has attached his actual April 2 Email. Dkt. 1-1 at 7; *see Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)

---

[2] *See also Harris v. Maryland House of Corrections*, 209 F.Supp.2d 565, 570 (D. Md. 2002) (holding that plaintiff could not bring retaliation claim where, in the filed charge for which she claimed she was retaliated, "plaintiff merely complained of the unfair manner in which her supervisors had treated her"); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F.Supp.2d 577, 588 (D. Md. 2005) (holding that plaintiff's raising of general complaints about the way she was treated, with no reference to race or national origin discrimination, was not protected activity); *Smith v. Virginia Dept. of Agric. & Consumer Servs.*, 2012 WL 2401749 (E.D. Va. June 25, 2012) (holding the plaintiff did not engage in protected activity where she raised concerns to human resources regarding the way she was treated but "nothing indicated she voiced concerns about employment practices made unlawful by Title VII").

(where a complaint's bare allegations conflict with an exhibit, the exhibit controls). Here, the April 2 Email makes clear that Plaintiff believed that he was being underpaid and that he believed that he had provided significant contributions that warranted a higher salary. Dkt. 1-1 at 7-10. Plaintiff does not suggest that Defendant has engaged in race discrimination in failing to provide him with the salary that he seeks nor does he complain that similarly situated persons of another race are making more than him. *Id*. Such complaints do not constitute a Title VII protected activity. *See Presnell v. Sharp Electronics Corp.*, 2022 WL 17683126, at *10 (W.D.N.C. Dec. 14, 2022) ("Presnell's complaints to her superiors and to the HR department about her compensation (and the compensation of other GSMs) is neither 'opposition' nor 'participation' protected activity."). Plaintiff's assertion that he "reported pay discrepancy with his Indian peers" on April 2 is belied by the contents of his email, which he attached to his Complaint. *Contrast* Dkt. 1-1 at 7-10, *with* Dkt. 12 at 4. Accordingly, the April 2 Email does not constitute a protected activity.

Plaintiff next seeks to rely on his allegation that he "filed a formal complaint with human resources regarding this issue on April 21, 2024." Dkt. 1 ¶ 20. Again, this is not sufficient to plausibly allege that he engaged in a Title VII protected activity. This is too vague to establish that the substance of his complaint was protected under Title VII. And, to the extent "this issue" refers to the issues raised in his April 2 Email, they were generalized complaints that did not raise issues protected under Title VII.

Plaintiff also seeks to rely on his May 16 Email. In his Complaint, Plaintiff alleged that he "again emailed his supervisor and additional managers, [sic] raising concerns that the pay disparity appeared to be a form of racial pay discrimination." Dkt. 1 ¶ 21. If this allegation accurately captured the contents of the May 16 Email, then this would be sufficient to plausibly allege a protected activity. However, it does not. Plaintiff attached the May 16 Email to his Complaint and, again, "in the event of conflict between the bare allegations of the complaint and any exhibit attached," the attached document controls. *Bang Laugh Love, LLC v. Viragh*, 2024 WL 1676841, at *2 n.3 (W.D. Va. Apr. 18, 2024).[3] The May 16 Email makes a general reference to "want[ing] to end all forms of discrimination at Freddie Mac" and the only specific reference

---

[3] The Court cautions counsel against permitting zealous advocacy to lead to misrepresentations to the Court.

6

he makes is to his "exclusion from the 'important teams.'" Dkt. 1-1 at 4. But Plaintiff does not connect this exclusion to any protected characteristic under Title VII. *See Conyers v. Va. Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 295-96 (E.D. Va. 2013) ("Nowhere does this email claim that Plaintiff is being discriminated against because of her race and/or sex."); *Lewis v. Inova Health Care Servs.*, 2024 WL 4438474, at *8 (E.D. Va. Oct. 7, 2024) (holding that complaints about isolation and "feeling like I was discriminated against" were insufficient to support a reasonable inference that plaintiff engaged in a protected activity). Plaintiff also makes general allegations that persons of Indian descent are more easily able to increase their position by "chang[ing] jobs frequently." Dkt. 1-1 at 6. But, again, this does not allege that *Defendant* has discriminated or otherwise violated Title VII. Accordingly, this too fails to plausibly allege a protected activity.

Finally, Plaintiff relies on his June 5 Email as his protected activity. In his Complaint, Plaintiff alleges only that he "immediately respond[ed] to the denial, which d[id] not address the points made, [sic] in his May 16, 2024 email." Dkt. 1 ¶ 23. Taken on its own, this allegation is vague and does not allege that the June 5 Email constituted protected activity under Title VII. That alone mandates dismissal. Nonetheless, the Court examines the contents of the June 5 Email, which is an insubordinate missive that engages in racial language and name-calling. Dkt. 1-1 at 1. It seems far-fetched to call Plaintiff's remarks asserting that Indians and/or South Asians "are all criminals" as being protected under Title VII. *Id.* But, taking Plaintiff's assertions in the email on their face, Plaintiff accused Defendant of "overpa[ying] Indians," who did not understand "fundamental concepts," but he does not allege that they were similarly situated to him or that they were paid more on the basis of their race. *Id.* To the contrary, Plaintiff's prior email had suggested that they were paid more because they were more easily able to job hop. *Id.* at 6. In short, Plaintiff accuses Defendant of not appreciating him and stealing money from him and then makes various comments about people of Indian descent. *Id.* at 1. Plaintiff accused "you all" of being "thieves" and asserted that he would be pursuing legal action against Defendant and "all of you racist people," but again did not provide a basis to suggest that he had a good faith belief that Defendant was violating Title VII. *Id.* at 1. To the extent Plaintiff rests his protected activity on the "all of you racist people" comment,

7

courts have recognized that calling supervisors racist is not a protected activity. *See Dietrich v. United Parcel Serv., Inc. (Ohio)*, 2025 WL 445050, at *5 (5th Cir. Feb. 10, 2025) (holding that accusation of "racism" was threadbare and failed to constitute a protected activity); *Ceus v. City of Tampa*, 803 F. App'x 235, 247 (11th Cir. 2020) (holding that allegation that defendant has a "racist issue" is not a protected activity); *Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 106 (3d Cir. 2019) (plaintiff who asserted that supervisor was "racist" did not engage in protected activity where she failed to put forth evidence of illegal employment practice); *Bright v. Coca Cola Refreshments USA, Inc.*, 2014 WL 5587349, at *20 (E.D.N.Y. Nov. 3, 2014) ("As a threshold matter, calling a supervisor a 'racist S.O.B.' is not a 'protected activity.'"). Thus, Plaintiff has not plausibly alleged that the June 5 Email constituted a protected activity.

Alternatively, even if Plaintiff's June 5 Email contained complaints that could be construed as arising under Title VII, courts have recognized that the way in which an employee raises such complaints can be "so disruptive or insubordinate that it strips away protections against retaliation." *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("[T]he way in which an employee presses complaints of discrimination can be so disruptive or insubordinate that it strips away protections against retaliation."); *Buchanan v. Hilton Garden Inn of Westbury*, 2008 WL 858986, at *12 (E.D.N.Y. Mar. 31, 2008) ("[P]laintiff's 'informal' complaints were accusatory, confrontational, and insubordinate . . . . Defendant had a formal process for filing a discrimination complaint, which plaintiff did not follow."). In other words, "the manner of opposition must be reasonable." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The Fourth Circuit has similarly recognized, the opposition clause "was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (same). Although such arguments are usually presented at later stages of the case, here, Plaintiff has attached the insubordinate, accusatory, and disruptive emails – in which he calls his supervisors/managers "criminals" and instructs them "[d]on't ever speak to me again." Dkt. 1-1 at 1. Accordingly, even if the June 5 Email made complaints protected under Title VII (which it does not), the insubordinate, accusatory, and disruptive email would not qualify as a protected activity.

In short, Plaintiff has not plausibly alleged a protected activity with respect to any of his emails or complaints. Accordingly, the Court will grant the Motion in this regard.[4]

IV.  CONCLUSION

Because Plaintiff has failed to plausibly allege a protected activity, the Motion will be granted. The Court cannot say that all potential amendments would be futile, however. Accordingly, the Court will permit Plaintiff one opportunity to file a motion for leave to amend.

Accordingly, it is hereby ORDERED that the Motion to Dismiss (Dkt. 8) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED without prejudice; and it is

FURTHER ORDERED that, if Plaintiff seeks to amend his Complaint, he is DIRECTED to file a motion to amend on or before Friday, February 27, 2026.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties.

It is SO ORDERED.

Alexandria, Virginia
February 11, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[4] Defendant's Motion also raises arguments regarding causation. These arguments are not as well taken at this stage of the proceedings. With respect to temporal proximity, although there is a gap between some of the alleged protected activities and the July firing, there is close proximity between those events and the June 7 suspension (which ultimately led to the termination). And Defendant's argument regarding whether the June 5 Email constitutes an intervening event is more appropriately made at a later stage of the proceeding.