## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JOHN JOYCE,                          )
                                     )
      Plaintiff,                )
                                     )
      v.                        )     Case No. 1:25-cv-0097-RDA-LRV
                                     )
FEDERAL HOME LOAN MORTGAGE           )
CORPORATION,                         )
                                     )
      Defendant.                )
                                     )

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Leave to Amend Complaint (Dkt. No. 16) (the "Motion to Amend"), the Proposed Amended Complaint (Dkt. No. 16-1) (the "PAC"), the memoranda in support thereof, (Dkt. No. 20), and in opposition thereto, (Dkt. No. 17). The briefing is complete and the Motion to Amend is ripe for resolution. The Court dispensed with the hearing noticed for April 10, 2026 because oral argument would not aid the decisional process. *See* E.D. Va. L. Civ. R. 7(J). Upon review of the Motion to Amend, the related briefing, the PAC, and the full record in this case, the undersigned recommends that the Motion to Amend be GRANTED and that the scope of discovery be tailored as set forth below.

### A. Background and Overview of Plaintiff's Proposed Amendments

On January 21, 2025, John Joyce ("Mr. Joyce" or "Plaintiff") filed a complaint against Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Defendant"), asserting one claim for Retaliation and Wrongful Discharge in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (*See* Dkt. No. 1 ¶¶ 27–32.) Mr. Joyce worked for Freddie Mac for approximately four years, until his termination on July 18, 2024, following certain complaints about his salary. (*Id.* ¶ 9.)

1

On April 17, 2025, Mr. Joyce successfully effectuated service on Freddie Mac.[1] (Dkt. No. 7.) On May 6, 2025, Freddie Mac filed a timely Motion to Dismiss. (Dkt. No. 8.) On February 11, 2026, the Court granted Freddie Mac's Motion to Dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. No. 15.) In dismissing the Complaint, the Court found that "Plaintiff failed to plead a protected activity," because "Plaintiff does not suggest that Defendant has engaged in race discrimination in failing to provide him with the salary that he seeks nor does he complain that similarly situated persons of another race are making more than him." (*Id.* at 5, 6.) Further, the Court found that one of the emails that Plaintiff relied on was an "insubordinate, accusatory, and disruptive email [that] would not qualify as a protected activity." (*Id.* at 8.) Nevertheless, the Court dismissed the Complaint without prejudice and directed Plaintiff to file any motion to amend on or before February 27, 2026. (*Id.* at 9.)

On February 27, 2026, Plaintiff filed the Motion to Amend, along with the PAC. (Dkt. Nos. 16, 16-1). Like the original Complaint, the PAC asserts one claim for Retaliation and Wrongful Discharge in Violation of Title VII. (Dkt. No. 16-1 ¶¶ 31–36.) The allegations in the PAC center on five communications sent or made by Plaintiff between April and June 2024. Three of the communications set forth in the PAC are not new; they were referenced in (and attached to) the original Complaint.[2] (*See* Dkt. Nos. 1 and 1-1.) The Court previously found the three communications insufficient to constitute a protected activity. (*See* Dkt. No. 15.) The other two communications included in the PAC – an HR portal complaint dated April 21, 2024 and an email dated June 25, 2024, are new. (Dkt. No. 16-1 ¶¶ 20–23, 28.) Plaintiff argues these two new

---

[1] Plaintiff previously attempted and failed to serve Defendant. (*See* Dkt. Nos. 5, 6.)
[2] The three communications are an April 2, 2024 email regarding Plaintiff's pay and benefits, a May 16, 2024 email to Plaintiff's supervisor and managers regarding pay issues, and a June 5, 2024 email (Dkt. No. 16-1 ¶¶ 18, 24, 26.) While copies of these emails were attached to the original Complaint (Dkt. No. 1-1), Plaintiff did not attach them to the PAC. (*See* Dkt. No. 16-1.)

2

communications "correct[] the deficiencies identified in the Court's Memorandum Opinion and Order." (Dkt. No. 20 at 1.) In the PAC, Plaintiff states that he "does not currently possess a copy of the HR complaint he submitted on April 21, 2024." (Dkt. No. 16-1 ¶ 21.) Plaintiff alleges "to the best of [his] recollection and belief" that the content of the HR complaint "would have been substantially similar" to the following:

> There is a pattern of systemic discrimination at Freddie Mac. Cody Hornberger (white/Caucasian) was an Agile Developer (I, II or III) I can't remember which who had
>
> been with Freddie Mac for 4 years. Cody was so good at his job that even the Senior most people like Vasu, Ganapathy and others would regularly depend on Cody's help to get their front end development work done and yet Cody was paid only $60k per year and passed up for a H1Bs complete their work for about a year now and I had told Kalpana that I could do the work myself, in far less time and with a higher quality result which would save the company a ton of money. Nevertheless, Bhuvan, someone with only the background of testing and not development, was hired to the position everyone agreed I should have been promoted to: Agile Development Senior recent promotion opportunity to a position that he was already overqualified for. Meanwhile, I have been putting in 12 to 16 hour days helping. To add insult to injury, Anjana Cox, a person with 1 year less seniority, no Computer Science degree and no notable accomplishments that neither I nor anyone else I asked was aware of, but nevertheless she was promoted to Agile Development Senior one year before me. When you finally got around to promoting me, you set my salary below that of Anjana's.

(*Id.* ¶¶ 21–22.) Plaintiff does not allege that the HR complaint stated the race or country of origin of the people he refers to as Vasu, Ganapathy, Kalpana, Bhuvan, and Anjana Cox. (*See generally id.*)

The second communication that is new to the PAC is an email dated June 25, 2024. The PAC includes what appears to be a screenshot or replica of the email, including the Subject, Date, and Sender and Recipient information. According to the PAC, Plaintiff sent the email to "Defendant's management and the investigation team." (*Id.* ¶ 28.) The email allegedly states:

> Miss Sonnier,
>
> Thank you for confirming receipt of my voice mail. Anjana Cox and Bhuvanesh Achutharathanim have the same job title as I do but they make more money than me. Both Bhuvanesh and Anjana are of Indian ethnicity as are the four managers of the Resolve team:

Kalpana, Vidhya, Prasad and Prahbjot. I am Caucasian. It is a violation of the law to pay people differently with the same title. This is racial discrimination. It is a violation of the law on the part of Freddie Mac. This injustice has been going on for nearly 2 years now and the stress and indignation it has caused has been accumulating over that time. If your findings at the close of this matter do not, at a minimum, include the above finding, then I respectfully request that we have at least one more call before you close out this case.

Thank You,

John M. Joyce

(*Id.*) Notably, Mr. Joyce sent the email 18 days after his June 7, 2024 suspension and approximately three weeks before his July 18, 2024 termination. (*Id.* ¶ 27.)

The undersigned's analysis of the Motion to Amend focuses on the April 21, 2024 HR complaint and June 25, 2024 email.

## B. Legal Standard

A party may timely amend its pleading once as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). In all other cases, a party must obtain the opposing party's written consent or the court's leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Rule 15 directs that the "court should freely give leave when justice so requires." *Id.* This liberal standard evinces "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). However, "leave to amend is not to be granted automatically" and the "[d]isposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).

The Fourth Circuit has instructed that leave to amend may be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426–27; *see also Deasy*, 833 F.2d at 40 ("A motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."). In

4

assessing whether a proposed amendment is futile, the Court considers whether the claim could withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming denial of motion to amend "because the proposed amendments could not withstand a motion to dismiss"); *see also Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021) ("A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss."). When considering a Rule 12(b)(6) motion to dismiss, the Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." *Britt v. DeJoy*, No. 20-1620, 2022 WL 4280495, *2 (4th Cir. Sept. 14, 2022) (citing *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

### C. Proposed Findings

Plaintiff's PAC consists of a single count alleging retaliation and wrongful discharge in violation of Title VII. (Dkt. No. 16-1 at 6.) To state a claim for retaliation under Title VII, Plaintiff must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). The Court dismissed the original Complaint "[b]ecause Plaintiff[] failed to plausibly allege a protected activity." (Dkt. No. 15 at 9.) Accordingly, as a first step, the Court considers whether the PAC alleges that Plaintiff engaged in a protected activity.

"Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). Protected activity "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016). To constitute protected activity, plaintiff must have complained of discrimination protected by one of the statutes

under which he is bringing his claims. *See McNair v. Computer Data Sys. Inc.*, 172 F.3d 863 (4th Cir. Jan. 26, 1999) (Unpublished Table Decision) ("[A] general complaint of unfair treatment does not translate into a charge of discrimination."). The Court looks to the two new communications in the PAC, dated April 21, 2024 and June 25, 2024, to determine whether the PAC plausibly pleads a protected activity.

In the alleged April 21, 2024 HR portal complaint, Plaintiff states that "[t]here is a pattern of systemic discrimination at Freddie Mac," as evidenced by Plaintiff being paid less than another employee, Anjana Cox, despite them both holding the position of "Agile Development Senior." (Dkt. No. 16-1 ¶ 22.) As evidence of alleged "systemic discrimination" at Freddie Mac, Plaintiff complains that a "white/Caucasian" employee, Cody Hornberger, was "passed up" for promotions and "paid only $60k per year." (*Id.*) Fatally, Plaintiff does not connect his dissatisfaction with his salary (or even that of Mr. Hornberger) to "any protected characteristic under Title VII" nor does he allege that Anjana Cox was paid more because of her race or that she was similarly situated to him (or Mr. Hornberger), beyond holding the same job title. In this way, the April 21, 2024 HR portal complaint suffers the same fatal flaw as the April 2, 2024, May 16, 2024 and June 5, 2024 communications previously addressed by the District Judge. (*See* Dkt. No. 15 at 7, 8; *see also Conyers v. Va. Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 295–96 (E.D. Va. 2013) ("Nowhere does this email claim that Plaintiff is being discriminated against because of her race and/or sex."); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F.Supp.2d 577, 588 (D. Md. 2005) (holding that plaintiff's raising of general complaints about the way she was treated, with no reference to race or national origin discrimination, was not protected activity); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (concluding that factors rendering comparators similar include whether they "dealt with the same supervisor, [were] subject to the same standards and . .

. engaged in the same conduct.").) The undersigned therefore recommends finding that the April 21, 2024 HR complaint does not constitute a protected activity for Title VII purposes and thus cannot be the basis for a retaliation claim.

In the June 25, 2024 email, however, Plaintiff connects what he views as a pay disparity with a protected characteristic. (*See* Dkt. No. 16-1 ¶ 28.) In the June 25 email, Plaintiff complained of "racial discrimination" on the basis that two individuals "of Indian ethnicity" with the same job title as Plaintiff "make more money" than Plaintiff. (*Id.*) Unlike the other four communications alleged in the PAC, the June 25 email alleges a pay disparity based on the protected characteristic of race or nationality. *Compare id., with Conyers*, 927 F. Supp. 2d at 295 (dismissing Title VII retaliation claim based on email that fails to "claim that Plaintiff is being discriminated against because of her race and/or sex); *see also* Dkt. No. 15 at 7. Accordingly, the undersigned finds that Plaintiff sending the June 25, 2024 email to Defendant's management and the investigation team constitutes protected activity. Plaintiff further alleges that he was terminated for engaging in a protected activity "based on his complaints regarding racial discrimination and unequal pay [sic] April 2, 2024, April 21,2024, May 16, 2024, and June 5, 2024 and June 25, 2024." (Dkt. No. 16-1 ¶ 29.)

Defendant does not appear to dispute that the June 25, 2024 email constitutes a protected activity. In opposing Plaintiff's Motion to Amend, Defendant argues that Plaintiff fails to allege a causal connection between the June 25, 2024 email and his July 18, 2024 termination. (Dkt. No. 17 at 8–10.) Defendant argues that by the time Plaintiff sent his June 25, 2024 email, "Plaintiff was already on administrative leave and the subject of an investigation due to his insubordination and the racist rant contained in the June 5, 2024 email." (*Id.* at 8–9.) According to Defendant, because Plaintiff already had been suspended by the time he sent the June 25, 2024 email, that

email "cannot support the conclusion that there was a causal link between the protected activity and the adverse employment action." (*Id.* at 9.) Defendant further points to paragraph 27 of the PAC, in which Plaintiff alleges that after sending an email on June 5, 2024, an HR investigator contacted him "to inform him that he was the subject to an investigation based on his June 5, 2024 email, which ultimately resulted in the suspension of his employment on June 7, 2024 and termination thereafter formally on July 18, 2024." (*Id.* (quoting Dkt. No. 16-1 ¶ 27).) According to Defendant, this language in the PAC "shows that Plaintiff believes that his discipline arose out of" his June 5, 2024 email. (*Id.*) However, the language in paragraph 27 of the PAC could be fairly read to mean that the June 5, 2024 email triggered the investigation and the *investigation* (which may have encompassed developments after the June 5, 2024 email) "ultimately resulted in" Plaintiff's suspension and July 18, 2024 termination. Moreover, in a later paragraph, Plaintiff alleges that he was "terminated" for engaging in protected activity, including his June 25, 2024 email. (Dkt. No. 16-1 ¶ 29.)

Viewing the allegations in the light most favorable to Plaintiff, as the Court must at this stage, the undersigned finds that, while meager, Plaintiff's allegation that he was *terminated* for engaging in protected activity by sending the June 25, 2024 email crosses the threshold to plausibly allege a causal connection.[3] For example, it is plausible (even if unlikely) that the investigation into the conduct that led to Plaintiff's June 7, 2024 suspension and investigation would have resulted in disciplinary action short of termination but for Plaintiff's June 25, 2024 email. At this stage of the proceedings, the allegations must be viewed in the light most favorable to Plaintiff

---

[3] The undersigned further notes that at the end of his June 25, 2024 email, Plaintiff asks that certain allegations in his email be included as "findings" in Defendant's investigation and that if Defendant is not inclined to include his allegations as findings that he and Ms. Sonnier "have at least one more call before you close out this case." (Dkt. No. 16-1 ¶ 28.) Read in the light most favorable to Plaintiff, this language plausibly suggests that as of June 25, 2024 Plaintiff did not contemplate that his termination likely was imminent.

and, thus, on the current record, the scale tips in Plaintiff's favor. *Britt*, 2022 WL 4280495, *2. Moreover, the undersigned is mindful of the District Judge's comment in the February 11, 2026 Memorandum Opinion and Order that causation arguments "are not as well taken at this stage of the proceedings." (Dkt. No. 15 at 9 n. 4.)

In sum, the District Judge previously found that the April 2, 2024, May 16, 2024, and June 5, 2024 emails (which are repeated in the PAC) do not constitute protected activity. The undersigned recommends finding that the April 21, 2024 HR portal complaint (which is new to the PAC) also does not constitute protected activity. However, the undersigned finds that the contents of Plaintiff's June 25, 2024 email are enough to plausibly plead that Plaintiff engaged in a protected activity when he sent the email to Defendant's management and the investigation team. And given that Plaintiff further alleges that he was subsequently terminated on July 18, 2024 for engaging in protected activity (via his June 25, 2024 email), the undersigned recommends finding that Plaintiff plausibly alleges the minimum required at this stage to bring a claim for retaliation under Title VII.

## D. Recommendations

For the reasons set forth above, the undersigned recommends Plaintiff's Motion to Amend (Dkt. No. 16) be GRANTED because the PAC sufficiently pleads that Plaintiff engaged in a protected activity when he sent the June 25, 2024 email to "Defendant's management and the investigation team" and that he subsequently experienced an adverse employment action when he was terminated approximately three weeks later. The undersigned further recommends finding that the other communications alleged in the PAC do not constitute protected activity and cannot give rise to a retaliation claim and that discovery therefore be tailored to probe only the circumstances surrounding Plaintiff's June 25, 2024 email, Plaintiff's allegations that the June 25, 2024 email impacted Defendant's decision to terminate Plaintiff in July 2024, and Defendant's defenses to such allegations.

**E.  Notice**

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

**ENTERED** this 9th day of April, 2026.


Alexandria, Virginia

_____/s/__ LRV_____
Lindsey Robinson Vaala
United States Magistrate Judge

10